UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MOHAMMAD A.,

            Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.

Case No. C21-669 RSM

**ORDER REVERSING DENIAL OF BENEFITS AND REMANDING FOR FURTHER PROCEEDINGS**

Plaintiff seeks review of the denial of his application for Supplemental Security Income Benefits. Plaintiff contends the ALJ erred by rejecting his symptom testimony, rejecting the opinions of Margarita Rodriguez-Escobar, M.D., rejecting the opinions of Anna Worley, M.D., and failing to adequately address Plaintiff's concentration, persistence, and pace in the residual functional capacity ("RFC") assessment. Pl. Op. Br. (Dkt. 12), p. 1. As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff is 46 years old, has at least a high school education, and has worked as a project engineer. Admin. Record ("AR") (Dkt. 10) 33–34. On March 22, 2018, Plaintiff applied for benefits, alleging disability as of January 1, 2001. AR 15, 269–75. Plaintiff's applications were

denied initially and on reconsideration.  AR 66–95.

After the ALJ conducted a hearing on July 20, 2020, the ALJ issued a decision finding Plaintiff not disabled.  AR 15–35, 41–65.  In relevant part, the ALJ found Plaintiff had severe impairments of left foot drop syndrome, traumatic arthropathy of the left pelvic region and thigh with left leg numbness, degenerative disc disease of the lumbar spine, and posttraumatic stress disorder.  AR 17.  The ALJ found Plaintiff could perform light work with additional exertional, postural, environmental, cognitive, and social limitations.  AR 22.

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision.  AR 1–3.

## DISCUSSION

This Court may set aside the Commissioner's denial of Social Security benefits only if the ALJ's decision is based on legal error or not supported by substantial evidence in the record as a whole.  *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).  The ALJ is responsible for evaluating evidence, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  Although the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the ALJ.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one interpretation, the ALJ's interpretation must be upheld if rational.  *Ford*, 950 F.3d at 1154.  This Court "may not reverse an ALJ's decision on account of an error that is harmless."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

A.   **Plaintiff's Testimony**

Plaintiff argues the ALJ erred by failing to give clear and convincing reasons for rejecting

ORDER REVERSING DENIAL OF
BENEFITS AND REMANDING FOR
FURTHER PROCEEDINGS - 2

his testimony regarding the severity of his symptoms. Pl. Op. Br., pp. 2–8. Plaintiff testified he has pain, numbness, and paralysis on his left side. AR 51, 298. He testified he has difficulty focusing. AR 53, 57. He testified he has a foot drop. AR 53. He testified he can stand for 10 to 15 minutes at a time. AR 53, 297, 299. He testified he can stand and/or walk for five minutes at a time. AR 53. He testified he can sit for 15 to 20 minutes before needing to change positions. AR 54. Elsewhere he reported he could sit for 30 to 45 minutes at a time. AR 297. He testified he has bad days due to pain and/or mental health three or four days a week where he lays down most of the day. AR 55. He testified he has flashbacks three to four days a week that last from 30 minutes to one hour. *Id.* He reported he does not engage in social activities. AR 297.

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). The ALJ must first determine whether the claimant has presented objective medical evidence of an impairment that "'could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014)). If the claimant satisfies the first step, and there is no evidence of malingering, the ALJ may only reject the claimant's testimony "'by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet.'" *Trevizo*, 871 F.3d at 678 (quoting *Garrison*, 759 F.3d at 1014–15).

The ALJ found Plaintiff met the first step, but discounted Plaintiff's testimony regarding the severity of his symptoms. AR 23. The ALJ erred in rejecting Plaintiff's testimony regarding his physical symptoms as "out of proportion to the objective findings." AR 23. An ALJ may reject a claimant's symptom testimony when it is contradicted by the medical evidence. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v.*

ORDER REVERSING DENIAL OF
BENEFITS AND REMANDING FOR
FURTHER PROCEEDINGS - 3

*Shalala,* 60 F.3d 1428, 1434 (9th Cir.1995)). But the ALJ must explain how the medical evidence contradicts the claimant's testimony. *See Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Furthermore, the ALJ "cannot simply pick out a few isolated instances" of medical health that support his conclusion, but must consider those instances in the broader context "with an understanding of the patient's overall well-being and the nature of [his] symptoms." *Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016). The ALJ acknowledged Plaintiff had atrophy or deformity of the left lower leg with a foot drop, difficulty walking on his left leg, and decreased sensation in his left knee, ankle, and foot. AR 24. The ALJ also acknowledged Plaintiff had decreased range of motion in his left hip, left ankle, and lumbar spine. *Id.* The ALJ pointed to a number of normal physical findings to contradict Plaintiff's testimony, but nearly all of those findings were unrelated to Plaintiff's conditions. For example, the ALJ noted Plaintiff had normal range of motion in his cervical spine, shoulders, and upper extremities, normal motor strength, and intact deep tendon reflexes. *Id.* The ALJ also noted Plaintiff was "pleasant, healthy appearing, or in no acute distress" during his appointments. *Id.* The ALJ failed to explain how any of that was relevant to or contradicted Plaintiff's testimony regarding the severity of his physical symptoms.

The ALJ pointed to additional statements in the record, but those did not provide substantial evidentiary support for his rejection of Plaintiff's testimony. The ALJ noted, for example, that Plaintiff reported physical therapy helped his pain, and led to improved gait mechanics with his ankle foot orthosis. AR 25. But the ALJ failed to fully contextualize these improvements. One of Plaintiff's physical therapists noted he had improved range of motion, gait, and body mechanics, among other things, which improved Plaintiff's ability to sit and stand. AR 819. However, that therapist noted Plaintiff was still limited in his ability to sit for more

than 30 minutes, stand for more than 15 minutes, and walk "community distances." *Id.* The ALJ's finding that this contradicted Plaintiff's testimony was not supported by substantial evidence, and the ALJ therefore erred.

The ALJ further erred in rejecting Plaintiff's testimony based on the fact that he missed six out of 12 physical therapy sessions in 2020. The record documents that Plaintiff had six appointments where he either failed to show, cancelled at the last minute, or did not arrive at the correct time/day. AR 813. Failure to follow a prescribed course of treatment can form the basis for rejecting a claimant's testimony. *See Molina*, 674 F.3d at 1113. Here, though, there is no indication why Plaintiff missed these six appointments, and he was ultimately discharged in part because he had plateaued in terms of improvement. *See* AR 813. Thus, the record does not support a finding that Plaintiff's failure to attend these six physical therapy appointments was because his symptoms were less severe than alleged.

The ALJ erred in rejecting Plaintiff's physical symptom testimony as inconsistent with his activities of daily living. In particular, the ALJ reasoned Plaintiff "appears to be able to care for young children at home . . . without any particular assistance except when he has to attend classes at school." AR 29. The record indicates Plaintiff's children were approximately 3, 8, 12, and 13 during the relevant period. *See* AR 508, 794. The record indicates Plaintiff at times cared for his children while his wife worked, but at other times his wife was a "homemaker," and he received assistance from family members. *See* AR 508, 742, 794, 802, 804–05, 809. Three of his children are school-aged, and there is no indication as to how much Plaintiff was physically required to do in caring for his children. *See* AR 742. The ALJ is entitled to interpret the evidence, but must do so in a rational way, and his findings must be supported by substantial evidence. *See Ford*, 950 F.3d at 1154. The ALJ's reasoning here did not meet that threshold.

ORDER REVERSING DENIAL OF
BENEFITS AND REMANDING FOR
FURTHER PROCEEDINGS - 5

Plaintiff does not directly challenge the ALJ's rejection of his testimony regarding the severity of his mental impairments.  The ALJ rejected this testimony because, at a minimum, he found it inconsistent with the overall medical record, and inconsistent with Plaintiff's failure to timely seek treatment after moving from Nebraska to Washington.  AR 26–29.  Plaintiff has failed to show the ALJ harmfully erred in making these findings.  *See Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) (citing *Shinseki v. Sanders*, 556 U.S. 396, 407–09 (2009)) (holding that the party challenging an administrative decision bears the burden of proving harmful error).

In sum, the ALJ erred in rejecting Plaintiff's testimony regarding the severity of his physical symptoms.  The ALJ did not harmfully err in rejecting Plaintiff's testimony regarding the severity of his mental symptoms.

**B.    Medical Opinions**

Plaintiff argues the ALJ erred by failing to give adequate reasons to reject the opinions of examining physician Dr. Rodriguez-Escobar and treating physician Dr. Worley.  Pl. Op. Br., pp. 9–12.

The Commissioner argues new regulations promulgated in 2017 change the standard by which the ALJ's reasons for rejecting medical providers' opinions are measured.  *See* Def. Resp. Br., Dkt. 15, pp. 8–9.  In 2017, the Commissioner issued new regulations governing how ALJs are to evaluate medical opinions.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017).  Under the new regulations, for claims filed on or after March 27, 2017, the Commissioner "will not defer or give any specific evidentiary weight . . . to any medical opinion(s) . . . including those from [the claimant's] medical sources."  20 C.F.R. § 416.920c(a).  The ALJ must nonetheless explain with specificity how he or she considered the factors of supportability and consistency in evaluating

the medical opinions. 20 C.F.R. § 416.920c(a)–(b). That explanation must be legitimate, as the Court will not affirm a decision that is based on legal error or not supported by substantial evidence. *See Trevizo*, 871 F.3d at 674. Thus, the regulations require the ALJ to provide specific and legitimate reasons to reject a doctor's opinions. *See also Kathleen G. v. Comm'r of Soc. Sec.*, No. C20-461 RSM, 2020 WL 6581012, at *3 (W.D. Wash. Nov. 10, 2020) (finding that the new regulations do not clearly supersede the "specific and legitimate" standard because the "specific and legitimate" standard refers not to how an *ALJ* should weigh or evaluate opinions, but rather the standard by which the *Court* evaluates whether the ALJ has reasonably articulated his or her consideration of the evidence).

          1.     Dr. Rodriguez-Escobar

Dr. Rodriguez-Escobar evaluated Plaintiff on August 15, 2018. AR 492–507. She opined Plaintiff needed to wear a left footdrop brace. AR 500. She opined "a long period of standing, walking, sitting, and going up or down stairs can be difficult for [Plaintiff] to perform." *Id.*

The ALJ found Dr. Rodriguez-Escobar's opinion that Plaintiff needed to wear a brace persuasive, but rejected the remainder of her opinions. AR 30. The ALJ reasoned Dr. Rodriguez-Escobar's other opinions were unspecific and were contradicted by Plaintiff's own statements to other providers. *Id.*

The ALJ did not harmfully err in rejecting Dr. Rodriguez-Escobar's opinions. Those opinions were so vague that it is not possible to tell if they conflict with the RFC. *See Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010) ("the ALJ did not need to provide 'clear and convincing reasons' for rejecting [a treating doctor's] report because the ALJ did not reject any of [his] conclusions"). That it was "difficult" for Plaintiff to stand or walk for

"a long period" is not necessarily inconsistent with a limitation to standing/walking for six hours in an eight-hour workday.  *See* AR 22, 500.

The ALJ's discussion of the medical evidence in relation to Dr. Rodriguez-Escobar's opinions contains many of the same errors as that discussion did in relation to Plaintiff's testimony.  Those errors are harmless, however, because they do not affect the ultimate disability determination here.  *See Molina*, 674 F.3d at 1115.  There is nothing in Dr. Rodriguez-Escobar's opinions that clearly conflicts with the RFC, and thus nothing to show the ALJ's decision would have come out differently had he properly evaluated her opinions.

### 2. Dr. Worley

Dr. Worley, one of Plaintiff's treating doctors, issued two opinion statements.  On January 25, 2018, she completed a work status report.  AR 343.  She opined Plaintiff could stand for two hours a day, walk for two hours a day, and would require 20-minute sit/stretch breaks every two hours.  *Id.*  She opined Plaintiff could sit for 12 hours a day, and lift/carry 20 pounds for four hours a day.  *Id.*  Dr. Worley stated these restrictions were in effect until April 30, 2018, and Plaintiff would be reevaluated when he completed physical therapy.  *Id.*

The ALJ rejected Dr. Worley's 2018 opinions because they were "temporary and only in effect until April 30, 2018." AR 30.  This was a valid reason.  Dr. Worley's opinion that Plaintiff had temporary limitations for a three-month period does not show what restrictions Plaintiff had for the entirety of the alleged disability period.  *See McMahon v. Saul*, 856 F. App'x 683, 686 (9th Cir. 2021) (affirming rejection of doctors' statements where they opined claimant's limitations would only last six months with available treatment).

Dr. Worley issued her second opinion statement in April 2020.  AR 755–57.  She opined Plaintiff could be expected to experience pain severe enough to interfere with his attention,

ORDER REVERSING DENIAL OF
BENEFITS AND REMANDING FOR
FURTHER PROCEEDINGS - 8

concentration, and persistence for about 30 minutes of every hour. AR 755–56. She opined Plaintiff could stand/walk for two to four hours in an eight-hour workday. AR 756. She opined Plaintiff could sit for two to four hours in an eight-hour workday. *Id*. She opined Plaintiff could constantly use his hands and arms for holding, handling, or manipulating. AR 757. And she opined Plaintiff would need to take one or more unscheduled work breaks of 15 minutes or more during a typical eight-hour workday. *Id.*

The ALJ rejected Dr. Worley's opinions, except for her opinion regarding Plaintiff's use of her hands and arms. AR 31. The ALJ reasoned: "[O]ther than stating that [the opinions were] based on her own observations of the claimant, the medical record, her professional expertise, and the claimant's own statements, she did not provide much explanation for [her opinions]." *Id*. An ALJ errs by rejecting a doctor's opinions as inadequately explained while failing to address the doctor's own treatment notes. *See Garrison*, 759 F.3d at 1013. The ALJ did not address Dr. Worley's treatment notes apart from his general discussion of the medical evidence, and thus failed to present a specific, legitimate reason here for rejecting Dr. Worley's 2020 opinions.

The ALJ further reasoned Dr. Worley's 2020 opinions were inconsistent with the overall medical record. AR 31. The ALJ's reasoning here was largely the same as it was with respect to Plaintiff's testimony, and thus fails for the same reasons.

The ALJ therefore did not err in rejecting Dr. Worley's 2018 opinions, but did harmfully err in rejecting Dr. Worley's 2020 opinions.

C.   **Concentration, Persistence, and Pace Limitations**

Plaintiff argues the ALJ erred by finding Plaintiff had a moderate limitation in his ability to concentrate, persist, or maintain pace, but failing to explain how that was accounted for in the RFC. Pl. Op. Br., pp. 8–9. The ALJ in the RFC limited Plaintiff to simple repetitive tasks. AR

ORDER REVERSING DENIAL OF
BENEFITS AND REMANDING FOR
FURTHER PROCEEDINGS - 9

22. The Court need not address this contention because this matter is being remanded for other reasons and the ALJ must reassess the RFC on remand.

### D. Scope of Remand

Plaintiff cursorily asks the Court to remand this matter for an award of benefits. Pl. Op. Br., p. 12. Except in rare circumstances, the appropriate remedy for an erroneous denial of benefits is remand for further proceedings. *See Leon v. Berryhill*, 880 F.3d 1041, 1043 (9th Cir. 2017) (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1100 (9th Cir. 2014)). Plaintiff has not analyzed the factors the Court considers before remanding for an award of benefits, nor shown any rare circumstances. The Court will remand for further administrative proceedings.

On remand, the ALJ shall reevaluate Plaintiff's testimony and Dr. Worley's 2020 opinions. The ALJ shall reassess Plaintiff's RFC, and all relevant steps of the disability evaluation process. The ALJ shall conduct all further proceedings necessary to reevaluate the disability determination in light of this opinion.

### CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

DATED this 6th day of December, 2021.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE